## John S. Budd

### *v.*

### Alfred Atkinson and others.

A father bought a farm and caused it to be conveyed to his son by deed duly recorded. The son entered into possession of the property and lived upon it. After he went into possession, he contracted debts on the credit of his ownership of the farm. Subsequently, at his father's request, as they said, he conveyed the property to his father, without consideration and on the allegation that the latter had never intended to give the farm to him, and that the son was not aware that the conveyance had been made to him.—*Held*, that the deed to the father was fraudulent as against the creditor.

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. M. R. Sooy*, for complainant.

*Mr. F. Voorhees*, for defendants.

Budd v. Atkinson.

THE CHANCELLOR.

The question presented for adjudication is, whether a deed from Alfred Atkinson to his father, Lewis Atkinson, for a farm in Burlington county, is fraudulent as against the complainant as a judgment creditor of the former. When the complainant's debt was contracted, Alfred was in possession of the farm, and was, apparently, the owner of it. It had been previously conveyed to him by Samuel Goldy and his wife, and the deed from them to him for it, conveying it in fee-simple to his own use, was on record when the debt was contracted. After the debt was contracted, and before suit was brought upon it, Alfred conveyed the property in fee to his father. There was no pecuniary consideration for that conveyance, but Alfred and his father allege that it was made merely for the purpose of vesting the title in the latter. The property was bought by Lewis, from Goldy, and he paid what was paid ($1,500) on account of the purchase-money ($6,000), the balance being the amount of two mortgages which were upon the property when it was sold. He states that, when he bought the property, he intended to give it to Alfred, if it should appear that the latter would be likely to do well with it, and that he therefore caused the deed from Goldy to be made to Alfred, but that it was delivered to him, and not to Alfred, and that the latter never knew, until he (Lewis) asked him to convey the property to him, that the title was in him.

The deed from Alfred to his father must be held to be fraudulent as against the complainant. From the spring of 1870, down to the commencement of this suit, Alfred was in possession of the farm, dealing with it as his own. The complainant's debt was contracted between 1873 and July 1st, 1876. The deed from Alfred to his father was dated August 9th, 1876. It was not recorded, however, until the 8th of December following. The complainant testifies that, when his debt was contracted, he believed that Alfred was the owner of the property, and he says that the reason why

he gave him the credit was because he thought he was the owner of it; that after the debt had been contracted, and in October, 1876, he caused a search to be made of the records of Burlington county, and, from it, found that the title was in Alfred, of record, and that he therefore delayed commencing suit against him.

Absalom E. Cox testifies that he has heard Alfred say that he had a deed for the farm, and has heard him speak of the farm as being his. Charles H. Haines, who was the assessor of the township from 1873 until he was sworn as a witness in this suit, testifies that he assessed the farm to Alfred, because he thought he was the owner of it; that he never asked him, until the spring of 1877, as to whom he should assess the property, and then Alfred told him to assess it to him.

Alfred remained on the farm after the deed to his father was made, the same as before. The deed from Goldy was not made to Lewis, but to Alfred. It was duly delivered. The delivery to Lewis was a valid delivery, and the title to the property was thereby vested in Alfred, who thus became and was the legal owner. If Lewis, indeed, intended that Alfred should only hold the title in trust for him until such time as he should see fit to give him the property, he, by causing the deed to be made to Alfred, and causing it to be recorded, held out the latter to the public as the owner of the farm; and as to those with whom Alfred contracted debts while the title so remained in him, the conveyance to Lewis was constructively fraudulent. *Besson* v. *Eveland*, 11 *C. E. Gr.* 468.

In March, 1872, a settlement was made between Alfred and his father of their mutual dealings, and the former was then found to be indebted to the latter in a sum exceeding $1,800, for money lent to Alfred by his father, and interest paid by the latter on the mortgages on the property, which interest and the taxes, they say, the former was to pay as rent for the premises. Alfred then gave to his father his promissory note for $1,700, at which amount the indebted-

ness was fixed, and secured its payment by a mortgage upon his personal property. In 1873 he gave to his father another mortgage upon his personal property, further to secure the payment of that debt, and on the 15th of August, 1876, he confessed a judgment to his father for the same debt. No levy was made, under that judgment, on the farm. It had been conveyed by Alfred to his father before that time. The latter insists that, if the farm is to be held to have been, up to the time of that conveyance, the property of Alfred, as to his creditors whose debts were contracted while he held the title, his judgment, which is prior in date of recovery to that of the complainant, must be held to be a lien upon it prior to the complainant's judgment, or the amount due from Alfred to his father on the note must be regarded, in equity, as secured by the deed.

The answer of Lewis makes no claim that the conveyance to him was in satisfaction or on account of his judgment, but alleges that it was made merely to vest the title in him as the owner of the property. And, again, Lewis has two chattel mortgages and a levy upon Alfred's personal property for his debt, and it does not appear that he has not sufficient security thereby. There is reason to believe that the farm was an advancement by Lewis to Alfred. It does not appear that the money which the former paid for purchase-money on the conveyance of it to the latter was beyond the latter's share of his estate, and though he subsequently paid off one of the mortgages (for $2,500) on the property, it appears that, as to $2,000 of the amount, he raised it on a mortgage, which, as he says, he supposed was on the farm conveyed to Alfred, together with his own, but which, to his surprise, he found, subsequently, had been put upon his farm alone. Though in his testimony he states that he bought the farm in question for his own use, and expected to work it; that he did not then know that Alfred contemplated marriage, but first learned that fact in the spring, after the 25th of March, and did not know it when the deed was made to Alfred: he says, in his answer, that

35

.Alfred resided with him when he bought the farm, and con-
.tinued to do so until April following (the deed to Alfred is
dated March 25th, 1870); that in the fall of the year 1869,
knowing that Alfred was intending to marry during the
winter or spring then next ensuing, and knowing, also, that
the only business which Alfred was acquainted with was
farming, and that he had no stock or implements with
which to cultivate a farm, nor any means with which to buy
a farm, or stock, or farming implements, and being desirous
that Alfred might have an opportunity afforded him of
obtaining a livelihood, he bought the farm in question. It
will be seen that, so far from being ignorant, when he
bought the farm, of the fact that Alfred contemplated mar-
riage, he gives in his answer the fact that the latter did then
contemplate marriage, as one of the considerations which
moved him to buy it. Alfred, in his testimony, says that
the way he understood the purchase was, that his father
bought the farm for his uncle, Hollingshead, and the latter
did not take it. The answer of Lewis and the testimony
show clearly that it was bought for Alfred, though Lewis,
in his testimony, says that he " bought the farm for himself,
and expected to farm it," and Alfred says it was bought for
his· uncle, as he understood it. Alfred was married in the
spring of 1870.

The proof in the cause seems far more consistent with the
proposition that the farm was an advancement, and when
Lewis found that Alfred was embarrassed in his pecuniary
affairs he deemed it proper to obtain a conveyance of it to
himself, to protect it against Alfred's creditors, than with
the statement of Lewis, that he obtained the conveyance
because he thought Alfred had had the farm long enough;
for, as before stated, Alfred remained in possession after the
conveyance just as he had been before. When the convey-
ance was made to Lewis, Alfred was embarrassed, and,
without the farm, was insolvent. The execution issued
against him ·on the complainant's judgment has been
returned wholly unsatisfied for want of property whereon to

Budd *v.* Atkinson.

levy.   It was issued in March, 1877.   Alfred confessed the judgment to his father, August 15th, 1876.   The deed to the latter was made six days before that time, but was not recorded for four months.   Alfred said, in reference to the judgment confessed to his father, that it was confessed because "people were suing him around," and he and his father "thought they would put a stop to it."   He says that his father left word with his (Alfred's) wife that he wanted "the deed back for the farm, so that he could sell it," but there is no evidence whatever of any intention to sell the property.   The excuse given for not having recorded the deed from Alfred for four months after it was executed, is far from satisfactory.   Lewis says he cannot tell why he did not record it earlier, and adds, by way of suggestion, that he supposes he did not happen to go to Mount Holly; but it is eminently worthy of remark, in this connection, that he caused the deed to Alfred to be recorded within three days after it was delivered; that he filed the first chattel mortgage in three days after it was executed, and the second on the same day on which it was given.   Nor is it at all clear, from the testimony, that the statement of Lewis and Alfred that the latter did not know that the deed for the property had been made to him until the time when he was requested to convey the farm to his father, is true.

In addition to the testimony of Absalom E. Cox, before mentioned, there is that of the complainant, that Alfred admitted that his father could not sell the property without his consent, and there are cogent suggestions from the testimony of Alfred and his father leading to the conclusion that it is by no means probable that Alfred was not aware that the title to the farm was in him until called upon to convey.

The deed to Lewis will be declared fraudulent as against the complainant's judgment.